39 C.C.P.A. (Patents)

## Application of RICE.

### Patent Appeal No. 5852.

United States Court of Customs and Patent Appeals.
March 18, 1952.

Charles C. Reif, Minneapolis, Minn., and Edwin A. Blosk, Washington, D. C., for appellant.

E. L. Reynolds, Washington, D. C., for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON and WORLEY, Judges.

WORLEY, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office sustaining that of the examiner

---

4. See Public Law 69, approved June 30, 1951, and Public Law 96, approved July, 31, 1951.

in finally rejecting as unpatentable over the prior art the single claim of appellant's patent application for an invention relative to certain new and useful improvements in "Game Apparatus."

The claim reads as follows:

"7. A game board comprising a surface marked to provide a square center area, a rectangular wing area extending from each side of said center area with one side coincident with a side of the center area, said center and wing areas being divided by intersecting lines to provide rows of checkered squares of substantially equal size, each corner at the juncture of adjacent wing areas having three squares marked therein to provide paths of movement between two rows of said wing areas for a game wherein playing pieces are to be moved along paths diagonal to the squares of said areas, alternate squares of the respective rows being of different color, and an undivided zone at the outer margin of each wing area extending the full length of said area and having a width corresponding to one side of said squares for a game wherein a playing piece is to be moved throughout the length of said outer zone into registration with any of the rows perpendicular to said elongated zone, said squares and zones constituting coplanar playing surfaces."

The references relied on are: Standidge 701,414 June 3, 1902; Billman 1,555,937 October 6, 1925; Simpkins D–124,373 December 31, 1940.

The invention claimed by appellant is aptly described by the Primary Examiner as follows:

" * * * a checkered board which is a modification of the conventional checkerboard in that it has end or wing portions added to the marginal portions of a checker board. A wing portion rectangular in shape, three spaces wide and equal in width to the length of one side of the main section is added to each side with the checkered spaces of the wings coinciding with the rows of spaces or squares of the mainboard to form a cruciform type of checker board. A plurality of additional squares, * * *, three in number, are provided in each corner between the ends of the rectangular portions with the sides of adjacent squares being colored differently to form horizontal and vertical extensions of the center or main playing area to provide paths of travel from one wing area to an adjacent one without passing through the central portion. Each wing has an elongated zone, one square wide and extending across the entire width and at the outer end thereof. All end zones being of the same color. * * *

"With the apparatus described various forms of checker games may be played. For the conventional game of checkers the center or main portion of the board is used. Using the wing portions a three or four handed game of checkers could be played but the game preferred by the applicant is similar to 'chinese checkers' and which he calls 'Yankee Checkers' and which can be played by two, three or four players. In the main, the game is similar to the class of games which go under the name of 'Chinese Checkers.' Some of the rules applicant's [sic] which are different from that game will be pointed out since they relate to some of the elements on the board. * * *

"The elongated end zones * * *, positioned at the outermost ends of the wings, are used as shifting areas for the playing pieces. A player can move into this area from any playing square bordering said zone and he can move sidewise any distance therein he wishes before moving into another square of the same wing portion. This feature is supposed to give the player greater flexibility in making his plays. The corner squares * * * permit the passage of a playing piece from wing section to another without being compelled to pass through the main section of the board. * * *"

The examiner rejected the claim because he did not regard it as being patentably distinct from the prior art. He stated that the Standidge, Billman and Simpkins patents each discloses a cruciform type of checkerboard; that the Standidge board was the same size as appellant's board and provided four areas juxtaposed to the four wings which could be used, if desired, as shifting zones similar to those claimed by appellant. He was further of the opinion that the Billman board anticipated appellant's structure

because three extra spaces are provided in the corners between the wings of the patent device, acting as extensions of the rows of spaces therein. He held that such spaces could be employed in the same manner in which appellant uses his own cornered spaces. He also held that, although the Standidge specification was silent in that regard, there is shown by the drawing therein shaded narrow portions adjacent the outer row of spaces and coterminous therewith which could be used as shifting zones if that feature were found to be desirable in playing a modified game of checkers.

In responding to the argument advanced by counsel for the appellant, that the narrow strips shown in the Standidge reference were not a part of the device itself and not coplanar with the playing surface, the examiner held it was immaterial whether such strips were on the same plane as the playing surface because they could still be used for shifting the pieces from one column to another, and added that even though they were not coplanar the difference was insignificant because the degree would be but the thickness of the game board and that it could be used for the shifting purpose of appellant.

The Board of Appeals sustained the examiner. In denying appellant's petition for reconsideration it stated it could find no patentability in merely providing the board of the Standidge patent, which it considered as being most pertinent, with extensions having undivided, or shifting, zones.

Counsel for appellant states in his brief that:

"The main novelty in appellant's board or the main novel feature thereof is in the provision of the additional zones * * *. These zones constitute the greatest difference in appellant's board over the prior art and these zones produce *new functions* of the board and *new results* are produced in the additional possibilities of play. * * *

"Using the [shifting] zone * * * and playing the regular and well-known game of checkers, a piece can be moved into said zone from any of the squares adjacent or contacting said zone. The piece can then be moved lengthwise of [the shifting] zone * * * so as to come into alignment with any of the squares contacting said zone. It will readily be seen that this *really produces a new game*. The possibilities of maneuvering the pieces on the board to get into advantageous positions are *greatly* increased. Said zone * * * could be used as the king row so that the opponent's pieces would have to be moved into said zone before they would become kings. The end rows in the portions * * * could be used as the king rows, as in common, and then the kings could be moved into the zone * * * and would then acquire the privilege of moving into the unshaded squares, * * * and could also have the privilege of moving any distance lengthwise of [the shifting] zone * * *.

"It is thus readily seen that a really new game and gameboard is produced having *many more possibilities of plays* and much more flexibility in maneuvering the pieces into advantageous positions. * * *

"* * * It is apparent therefore that appellant has a novel structure constituting a *novel combination,* which *combination* produces *new functions* and *new and useful results."* [Italics quoted.]

We are in agreement with the Board of Appeals on all points except its conclusion that no patentability exists in the idea of forming the undivided or shifting zones as extensions of the Standidge reference.

It is to be noted that the examiner held the lateral shaded zones in Standidge were a part of the game board itself, but the board agreed with appellant that the shaded areas did not constitute a part of the board itself but was a part of the playing table upon which the board rested. An examination of the Standidge specification and drawing convinces us of the correctness of the board's holding in that respect. The board did hold, however, that if players were informed of the rules devised for using the board of appellant the game could be played on Standidge even though the board and table on which it is placed were not coplanar; and held further that an extension of the Standidge board as disclosed by the appellant did not constitute invention. That, in our opinion, does not necessarily follow. Of course after a knowledge of a new device has been acquired, it is not

325

difficult to then see how another device, though different from the former, could be employed in the same fashion. In our opinion appellant's conception of the shifting zone, offering as it does a new and different structure which provides an opportunity for a multitude of new games, required something more than ordinary skill.

We do not believe that any of the references or combination thereof are sufficient upon which to base a rejection of the claim directed to the shifting zone as disclosed by the appellant. Incidentally, it may be noted that the Standidge device was patented nearly fifty years ago, and as far as prior art is concerned it was not until appellant offered his invention were any changes made to provide a shifting zone. We feel the appellant has disclosed a new and novel feature relating to game apparatus and that such disclosure required the exercise of invention.

For the reasons set out above, we feel that the decision of the Board of Appeals should be, and is hereby, reversed.

Reversed.